IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEON WEINGRAD** individually and on behalf of a class of all persons and entities similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**FUND MATE LLC**<br><br>**and**<br><br>**MENACHEM MINSKY**<br><br>*Defendants*. | Case No.<br>24-4716<br><br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff Leon Weingrad ("Plaintiff" or "Mr. Weingrad") brings this Class Action Complaint and Demand for Jury Trial against Defendants Fund Mate LLC, and its owner Menachem Minsky ("Defendants" or "FundMate") and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations

was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that FundMate violated the TCPA by making telemarketing calls to Plaintiff, and other putative class members listed on the National Do Not Call Registry without their written consent, by making telemarketing calls without the accurate provision of Caller ID Name (CNAM), as well as calling people who had previously asked to no longer receive calls.

4. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

5.

## PARTIES

6. Plaintiff Leon Weingrad is an individual with a 267- area code number.

7. Defendant Fund Mate LLC, which does business under the name FundMate, is, and, at all times relevant, was, a New York corporation with its headquarters and principal place of business in Monticello New York.

8. Defendant Menachem Minsky is the owner and managing director of Defendant FundMate who resides in New York.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

10. This Court has specific personal jurisdiction over Defendants because FundMate and Minsky sell their loan products in this District and called and texted the Plaintiff at his 267- area code number to attempt to sell him a loan. Moreover, Defendant used 215 and 267 area code numbers to contact Plaintiff.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telephone calls at issue were orchestrated into and sent to this District, and therefore a substantial part of the events giving rise to the claim occurred in this District.

## BACKGROUND

**A.   The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

12. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.    The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.**

16. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

17. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

18. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

<strong>FACTUAL ALLEGATIONS</strong>

19. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

20. At no point did the Plaintiff consent to receiving telemarketing calls from the Defendants prior to receiving the automated calls at issue.

21. Plaintiff's telephone number, (267) XXX-XXXX, is a residential, non-commercial telephone number.

22. Mr. Weingrad uses the number for personal, residential, and household reasons.

23. Mr. Weingrad does not use the number for business reasons or business use.

24. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

25. Plaintiff's telephone number has been listed on the National Do Not Call Registry since he listed it there more than a year prior to the calls at issue.

26. Plaintiff has never been a customer of FundMate and never consented to receive calls or text messages from FundMate.

27. Despite that fact, throughout August and September of 2024, and continuing through the pendency of this litigation, the Plaintiff received at least seven calls and thirty-two text messages from agents of FundMate, including Mr. Misnsky his very self, who were attempting to sell him loans.

28. The calls and text message calls all came from the following numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | CNAM Available? | CNAM Result | Carrier |
|---|---|---|---|
| 9547406321 | Y | FT LAUDRDALE FL | Onvoy |
| 9547406105 | Y | FT LAUDRDALE F | Onvoy |
| 9549030416 | Y | FT LAUDRDALE FL | Onvoy |
| 7542199660 | Y | HOLLYWOOD FL | Onvoy |
| 3855011213 | Y | SALT LAKE UT | Bandwidth |

5

| 4453237109 | Y | PRIVATE | Level 3 |
| 4453237588 | Y | PRIVATE | Level 3 |
| 4452019878 | Y | PRIVATE | Level 3 |
| 2679468598 | Y | PRIVATE | Level 3 |
| 2154843705 | Y | SOUDERTON PA | Onvoy |

29. As the aforementioned chart shows, the CNAM transmitted by the Defendants' ultimate telephone carriers, provided CNAM functionality, but the CNAM functionality transmitted a geographic location and not the Defendant's name or telemarketer's name.

30. Each of the aforementioned carriers provides its customers the ability to set the CNAM result accurately to reflect their own name as desired, but if the customer does not elect such a CNAM, their default CNAM customer setting is to transmit the geographic location of the telephone exchange for the calling telephone number, and not the caller's name, as occurred here.

31. It is not possible to call any of these numbers back to lodge a Do Not Call request during regular business hours.

32. Indeed, the Plaintiff did so by attempting to make such requests, but such requests were dishonored because the Plaintiff continued to receive calls.

33. The messages were all sent after Defendant Minsky voluntarily dissolved FundMate LLC in Florida in May of 2024, and after Minsky started Fund Mate LLC in New York.

34. Upon information and belief, Minsky did so because he moved to New York.

35. Regardless, Defendant Minsky is personally liable for the following calls based on well established TCPA case law, including because he sent some of the calls and messages himself, including during the pendency of this litigation and after he was served, as outlined above.

36. Defendant Minsky personally directed and had his employees working for him personally to place calls and send text messages on his behalf.

37. As evidenced above, Mr. Minsky appears to have personally sent the calls and text messages that originated from at least one number, the 954-740-6321 number.

38. Defendant Minsky personally paid for the telephone services used to place the TCPA violative conduct at issue.

39. Defendant Minsky may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

40. Minsky personally directed the TCPA-violative conduct at issue because he personally programmed and recorded the messages for the system which sent the text messages which violated the TCPA, personally attempted to sell the loans being advertised, and personally paid for and programmed the requisite systems required to make the calls.

41. Minsky was also the individual responsible for drafting, setting, implementing, and controlling FundMate's marketing strategy, including the use of illegal calls and text messages and the scripting for such calls and messages, as well as personally sending them.

42. The foregoing facts demonstrate that Minsky had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

43. The calls were all linked to the Defendants by the Defendants' own admission.

44.     Specifically, on August 19, 2024, the Plaintiff received an unsolicited text message from the caller ID 954-903-0416, from "Hunter Gibson" a "senior qualifications executive at FMC," seeking to sell him loans.

**FUNDMATE FUNDING APPLICATION**

W: fundmatellc.com
P: (800) 723 1691

There are no obligations/Fees associated with an Approval.

45.     "Hunter Gibson" later admitted the FMC was an alias for the Defendants.

46.     "Hunter Gibson" then sent the Plaintiff a link to a JotForm loan application as well as other text messages in furtherance of attempting to sell the Plaintiff a loan, all without the Plaintiff asking for the same in any way:

47.     The calls and text messages continued, including an August 22 call from 385-501-1213, from an agent identifying themselves as calling from FundMate, and during which the Plaintiff made no indicators of interest. Upon information and belief, this is a Google Voice number registered in Defendant Minsky's name.

48.     The text messages continued, including two text messages from 754-219-9660 on August 30, 2024, from "Sophie" also soliciting a loan. "Sophie" confirmed that she was texting from FundMate.

49.     The calls and text messages continued, including as recently as January of this year, meaning that there is a continuous, actual, and imminent risk of future harm to Plaintiff if an injunction stopping this conduct is not issued.

/

/

/

/

8

50.     For example, the Plaintiff received the following messages on October 7, 2024, after this litigation had commenced, noting repeatedly to stop calling:



51.     Indeed, after the October 7, 2024 message, the Plaintiff received another message on October 28, 2024 from the same 954-740-6321 number which identified as "Manny" from "Fundmate capital." Upon information and belief, this message was sent by Defendant Minsky, as the nickname "Manny" is short for "Menachem":



9

52. The calls and text messages further continued into the New Year, including calls on December 5, December 11, and December 12, 2024, as well as January 6, 2025.

53. All these calls were of the same ilk, advertising that Defendants, by name were "direct lenders," and offering capital loans and funding, and in some cases sending the aforementioned loan application.

54. All the calls and text messages were sent to attempt to sell the Plaintiff loans.

55. Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

56. The calls were unwanted.

57. The calls were nonconsensual encounters.

58. In fact, as evidenced above, the Plaintiff sued the Defendants, requested that the calls stop, and they did not stop.

59. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

60. Plaintiff never provided his consent or requested the calls.

61. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and he was annoyed and harassed. In addition, the calls occupied Plaintiff's telephone line, storage space, and bandwidth, rendering it unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

62. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

63. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

**National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants encouraging the purchase of their goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendants' or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request to Defendants during regular business hours, (4) within the four years prior to the filing of the Complaint.

**Internal DNC Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendants at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

64. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of their agents.

65. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendants' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

66. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendants have no defenses unique to Plaintiff.

67. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

   a. Whether Defendants obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

   b. whether Defendants honored internal Do Not Call requests;

   c. whether Defendants transmitted CPN or ANI and its name in the caller ID information, when provided as an option by their telephone carrier, to Plaintiff and members of the Telemarketing Caller ID Class, and whether such information so transmitted would permit a consumer to lodge an internal Do Not Call request during normal business hours;

   d. Whether Defendants have established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations; AND

   e. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

68. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members in each class, such that joinder of all members is impracticable.

69. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

    a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

    b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

    c. Defendants have acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

    d. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

70. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

71. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

72. Defendants' violations were negligent, willful, or knowing.

73. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

74. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1601(e)
### (On behalf of Plaintiff and the Telemarketing Caller ID Class)

75. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

76. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

77. It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

78. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without proving a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours, as well as by using "spoofed" caller IDs that did not allow consumers to lodge a do-not-call request during regular business hours.

79. These violations were willful or knowing.

80. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

81. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Internal DNC Class)

82. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

83. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

84. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

85. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers advertising goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B. Injunctive relief requiring Defendants to transmit compliant caller ID in the future;

C.  Injunctive relief requiring Defendants to honor internal Do Not Call requests in the future;

D.  That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

E.  An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F.  Such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 22nd day of December, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com